### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

GRAND BOULE OF SIGMA PI PHI
FRATERNITY, INC. d/b/a SIGMA PI
PHI,

     Plaintiff,

 v.

JETERACTIVE, LLC,

     Defendant.

Civil Action File No.

**JURY TRIAL DEMANDED**

### GRAND BOULE OF SIGMA PI PHI FRATERNITY, INC.'S d/b/a SIGMA PI PHI VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Comes now, Plaintiff Grand Boulé of the Sigma Pi Phi Fraternity, Inc., d/b/a Sigma Pi Phi ("Sigma Pi Phi"), by and through its counsel, and brings this Complaint against Jeteractive, L.L.C. ("Jeteractive") as follows:

### SUMMARY OF CLAIMS

1. This is an action by Sigma Pi Phi against Jeteractive stemming from Jeteractive's breach of contract; violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1115; misappropriation of Sigma Pi Phi's trade secrets under the Defend Against Trade Secret Act, 18 U.S.C. § 1836, *et seq*.; deceptive trade practices intended to disparage Sigma Pi Phi; and conversion.

2. As set forth below, Jeteractive's use of the "sigmapiphi.org" domain

intentionally and willfully infringes Plaintiff's U.S. Trademark Registration No. 3,689,057 for "SIGMA PI PHI".

3.      Jeteractive is a cybersquatter of the "sigmapiphi.org" domain.

4.      Jeteractive published false statements with the intent to cause injury to Sigma Pi Phi, and has converted Sigma Pi Phi's intellectual property.

5.      Jeteractive has exercised control over the sigmapiphi.org website and is denying Sigma Pi Phi access to and exclusive control over Sigma Pi Phi's data, and has further failed to return the Fraternity's email database which contains the contact information of its members, effectively shutting down Sigma Pi Phi's ability to communicate, fundraise and otherwise operate the organization.

6.      Jeteractive's activities will continue unless enjoined by this Court.

## I. <u>PARTIES</u>

7.      Plaintiff Sigma Pi Phi is a nonprofit corporation organized in the state of Pennsylvania, with its principal place of business in Fulton County, Georgia.

8.      Sigma Pi Phi was founded in 1904 to enhance and support the professional careers and social relationships of its members. Notable members of Sigma Pi Phi include W.E.B. DuBois, Martin L. King, Jr., and Ambassador Andrew Young, as well as several other business and civic leaders.  There are currently 5,000 members of Sigma Pi Phi.

9.      Defendant Jeteractive is a Washington, D.C. limited liability company.

10.    Jeteractive provides webpage management services.

## II. JURISDICTION AND VENUE

11.    This Court has original subject matter jurisdiction over Sigma Pi Phi's claims for violations of the Anticybersquatting Consumer Protection Act pursuant to 15 U.S.C. § 1115. This Court has subject matter jurisdiction over Sigma Pi Phi's federal trade secret claim pursuant to 18 U.S.C. § 1836, *et seq*. and 28 U.S.C. 1331 because Sigma Pi Phi asserts the claim for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016.

12.    This Court has supplemental jurisdiction pursuant to 38 U.S.C. § 1338 to hear the state law claims for deceptive trade practices, breach of contract, and conversion which are joined with the federal claims.

13.    Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises its subject matter jurisdiction over all causes of action asserted herein.

14.    This Court has personal jurisdiction over Jeteractive because it transacted business and performed work in this State, caused tortious injury in this State and/or regularly has done or solicited business in this State, or engaged in a persistent course of conduct in this State.

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred

in the State of Georgia, and in this judicial district. In addition to the allegations above and below, the Parties contractually agreed to be governed by the laws of the State of Georgia. *See* Ex. 4 at § 9.04.

### III. <u>FACTS COMMON TO ALL COUNTS</u>

#### A.  Sigma Pi Phi's Proprietary Rights in the SIGMA PI PHI Trademark

16.  Sigma Pi Phi is a nonprofit corporation with its principal place of business in Fulton County, Georgia. Sigma Pi Phi was founded in 1904 and operates throughout the United States of America. In 1980, Plaintiff was granted a 501(c)(3) status to provide scholarships, social engagement programs, and other charitable actions.

17.  Plaintiff has used the "SIGMA PI PHI" trademark in connection with the aforementioned services since on or about May 15, 1904. *See* Ex. 1. Furthermore, Plaintiff officially registered the SIGMA PI PHI trademark, which was assigned registration number 3,689,057 on September 29, 2009, with the U.S. Patent and Trademark Office. *See* Ex. 2. Sigma Pi Phi never abandoned use of its trademark for the aforementioned services.

18.  The sigmapiphi.org domain name was registered on or about September 5, 2002, and Plaintiff enjoyed uninterrupted use of the domain name since that date. *See* Ex. 3.

19.  Sigma Pi Phi possesses all right, title, and interest in and to the common

law sigmapiphi.org trademark based on the continuous use and ownership of the SIGMA PI PHI trademark in U.S. commerce.

20.    Sigma Pi Phi further owns e-mail addresses associated with the sigmapiphi.org domain name including, but not limited to, the info@sigmapiphi.org general email address.

21.    Finally, Sigma Pi Phi owns and possesses confidential and trade secret information. Specifically, Sigma Pi Phi's confidential and trade secret information includes: (A) its membership listing and the member's biographical information, (B) the membership's contact information, (C) Sigma Pi Phi's administrative content housed in the data server, (D) Sigma Pi Phi's delegate management interface, (E) Sigma Pi Phi's delegate e-mail servers, (F) the source code associated with the www.sigmapiphi.org website, and (G) a compilation trade secret incorporating trade secrets (A) through (F).

**B.    Defendant's Infringing Activities and Bad Faith Conduct**

22.    On or about August 12, 2009, Jeteractive purchased, and subsequently updated, a ten year unlimited business email, deluxe calendar, and economy online storage for the sigmapiphi.org domain name.

23.    On or about September 24, 2012, the Parties entered into a contractual agreement ("Agreement").  *See* Ex. 4.  Pursuant to the Agreement, Jeteractive agreed to provide webservice hosting and software management for Sigma Pi Phi.  *Id*.  The

Agreement expressly states, Sigma Pi Phi "shall have full and exclusive right, title and interest in and to all patents, copyrights, trademarks (including any applications therefor), trade secrets, and other intellectual property rights developed under, or relating to the subject matter of" the Agreement. *Id*. at § 9.01.

24.     As early as January of 2024, Sigma Pi Phi informed Jeterative that Sigma Pi Phi was and had been dissatisfied with the current website.

25.     As a result, Sigma Pi Phi selected another vender through the RFP process to develop and provide their new technology platform going forward. Because Jeterative was not selected as the New Grand Boulé Technology Platform ("NGTP"), Sigma Pi Phi wished to engage in an orderly transition of services to a new service provider.

26.     On January 18, 2024, Bennett Gaines, the Executive Director of Sigma Pi Phi, met with Lisa Jeter, principal of Jeterative, via Zoom to discuss the terms under which Jeterative would continue to provide services to Sigma Pi Phi until Sigma Pi Phi transitioned its webservice hosting and software management to the new recipient of the NGTP.

27.     During this meeting, Lisa Jeter agreed that Jeterative would continue to provide the same services it had been providing to Sigma Pi Phi under the Parties Agreement until the end of October of 2024.

28.     Sigma Pi Phi requested that Jeterative provide any outstanding

invoices in furtherance of the transition, but Jeteractive failed to timely provide invoices for services purportedly rendered.

29.    Jeteractive did not provide Sigma Pi Phi with invoices for January to May of 2024, until May 8, 2024. *See* Ex. 5.

30.    On March 8, 2024, Jeteractive purported to unilaterally terminate the Parties Agreement.  *See* Ex. 6.

31.    On March 15, 2024, Sigma Pi Phi and Jeteractive discussed the Parties obligations and responsibilities under the Agreement. During this meeting, Jeteractive withdrew its termination notice.

32.     On March 19, 2024, Andrew Patterson, on behalf of Sigma Pi Phi sent a letter to Counsel for Jeteractive, Bernard Coleman Jr., in which he summarized the agreement reached by the Parties on March 15, 2024. *See* Ex. 7.

33.    Within the March 19, 2024 Letter, amongst other things, (1) Sigma Pi Phi requested that all data residing on Jeteractive servers from when Jeteractive began providing services to Sigma Pi Phi, approximately in 2002, through December 2022, should be provided to Coltrane Hyde by March 31, 2024; and (2) confirmed that Jeteractive agreed to continue to provide services as they had been provided since June 5, 2023 through October 30, 2024 consistent with the current rates. *Id.*

34.    On or about April 5, 2024, Lisa Jeter agreed to send Sigma Pi Phi its proprietary and confidential information and committed to handing over "full

access/ownership of [the] account" to Sigma Pi Phi once it transferred the domain sigmapiphi.org to a GoDaddy account created for that purpose. However, Jeteractive sent Sigma Pi Phi blank files, not the requested files with Sigma Pi Phi's intellectual property.

35.    On April 10, 2024, Jeteractive sent an email to Sigma Pi Phi purporting to provide it with "all the information they need[]" to access its domain and GoDaddy account, including the alleged account number "2155939795." The GoDaddy account was used to register the sigmapiphi.org domain name. *See* Ex. 8.

36.    Between April 10, 2024 and April 15, 2024 Sigma Pi Phi attempted to access the GoDaddy account, but was unsuccessful because their access was blocked by the two-factor authentication requirement.

37.    On April 15, 2024, Lisa Jeter claimed to have confirmed with GoDaddy that the two-factor authentication was not active for the account and was not required to login. *See* Ex. 9.

38.    On or about June 15, 2024, Jeteractive used Sigma Pi Phi's proprietary and confidential information and accessed data on the sigmapiphi.org email servers to send an unauthorized mass email message to the entire membership of Sigma Pi Phi. *See* Ex. 10. The e-mail included the following statement:



Dear Members of Sigma Pi Phi Fraternity,

This afternoon Archon Patterson sent us a notification that Jeteractive "has taken down the Fraternity website" and that we could be liable for damages. All of the Fraternity websites that Jeteractive manages are functioning with no interruption; donations are being received and Archons continue to post on BLuE. It is disappointing that we would be accused of hindering the Fraternity's work.

What is more important for you to know is that the Office of the Grand Boulé has not paid any of our invoices since December 2023, without explanation or cause. We are reluctantly notifying the membership of this situation.

39.     On the same day, Sigma Pi Phi conducted a routine check of its website and intellectual property and noticed that the website sigmapiphi.org featured the statement shown below.

6/26/24, 1:25 PM                                     sigmapiphi.org/home

**Payment Required**

**Archon Douglass has mischaracterized the Office of the Grand Boule not paying invoices without comment since December as an issue with the vendor and legacy systems.**

**We have served the Fraternity for decades on our private, dedicated hardware without a breach, compromise or interruption.**

**The sole issue is non payment for services rendered. Service can be restored as soon as payment is received. There are no security or technical issues.**

A true and correct copy of this statement is attached hereto as Exhibit 11.

40.     Jeteractive is not authorized to use any of Sigma Pi Phi's trademarks or the www.sigmapiphi.org website to make the statement above.

9

41.    Additionally, Jeteractive blocked Sigma Pi Phi's access to the sigmapiphi.org domain, the administrative emails using the sigmapiphi.org domain, Sigma Pi Phi's webserver software, Sigma Pi Phi's administrative content, Sigma Pi Phi's delegate management interface, and Sigma Pi Phi's data manager interface.

42.    Sigma Pi Phi thereafter repeatedly communicated with Jeteractive in an attempt to restore the www.sigmapiphi.org website and regain access to Sigma Pi Phi's intellectual property.

43.    On or about June 25, 2024, due to the urgency of gaining access to its data, Sigma Pi Phi paid all invoices that Jeteractive claimed were outstanding at that time, despite its objections regarding Jeteractive's nonperformance of services. The payment included prepayment through July 31, 2024.  *See* Ex. 12.

44.    On or about June 28, 2024, Jeteractive deactivated the functionality of the Sigma Pi Phi's Website, and removed or deleted the data presented thereupon, thereby preventing Sigma Pi Phi's access to and use of Sigma Pi Phi's Website. *See* Ex. 13.

45.    On or about July 2, 2024, Jeteractive by and through its attorney, acknowledged receipt of the June 25, 2024 payment, but in response, improperly and in bad faith, sought to extract further payments from Sigma Pi Phi, including payments for services it claims will be rendered in the future by asserting that Sigma Pi Phi must pay the newly issued invoices, which included untimely issued invoices

for purported prior services, and invoices for services purportedly to be performed through September 2024 before Jeteractive will: (1) restore Sigma Pi Phi's website and all associated functionality, (2) provide Sigma Pi Phi with access to its Website, (3) transfer Sigma Pi Phi's own data back to the Fraternity, or (4) comply with the terms of the Agreement, including the items set forth in the July 3, 2024 Demand Letter. *See* Ex. 14.

46. In response, on or about July 3, 2024, Sigma Pi Phi sent a demand letter to Jeteractive. *See* Ex. 15. The demand letter requested, among other things (1) immediate removal of the statement on the sigmapiphi.org website, and (2) immediate restoration of www.sigmapiphi.org and all its associated functionality.

47. Thereafter, on or about July 5, 2024, Jeteractive caused the www.sigmapiphi.org website to be offline and inaccessible to Sigma Pi Phi's membership and the general public. *See* Ex. 16.

48. On or about this same day, Jeteractive sent Sigma Pi Phi several newly issued invoices for yearly subscription fees and services rendered dated June 1, 2024, and July 1, 2024, and new invoices seeking pre-payment for services to be rendered from July through September 2024. *See* Ex. 17.

49. Jeteractive refused to (1) restore Sigma Pi Phi's Website and all associated functionality, (2) provide Sigma Pi Phi with access to its Website, (3) transfer Sigma Pi Phi back its own data; or (4) comply with the terms of the

Agreement, including the items set forth in the July 3, 2024 Demand Letter, until Sigma Pi Phi paid the newly issued invoices for past and future services.

50.     On July 16, 2024, Sigma Pi Phi sent Jeteractive a Second Demand Letter in which it (1) requested Jeteractive provide Sigma Pi Phi with the two-factor authentication for the GoDaddy account used to register the sigmapiphi.org domain name; (2) notified Jeteractive that it was aware of several changes it had made, or caused to be made to Sigma Pi Phi's website, which still remained inaccessible to its members; and (3) in good faith agreed to pay the invoices as requested by Jeteractive, in exchange for Jeteractive restoring Sigma Pi Phi's full use of its Website and all associated functionality, and Jeteractive transferring the sigmapiphi.org domain name to bennett.gaines@sigmapiphi.com. *See* Ex. 18.

51.     That same day, Counsel for Jeteractive sent Ceasar Mitchell, Jr., an attorney at Dentons representing Sigma Pi Phi, an email including a screenshot that showed the correct customer number for the GoDaddy account was 26908907, not the 2155939795 number provided in the April 10, 2024, Email.  *See* Ex. 9.

52.     On July 22, 2024, Sigma Pi Phi informed Jeteractive that it did not provide the Fraternity with the correct customer number in the April 10, 2024 ,email. *See* Ex. 19."

53.     Once Sigma Pi Phi had the proper verification information to communicate directly with GoDaddy, it requested GoDaddy remove the two-factor

authentication notification to Lisa Jeter.

54.   It was not until July 24, 2024 — after Sigma Pi Phi had already requested the two-factor authentication be removed — that Lisa Jeter contacted GoDaddy in an attempt to request that GoDaddy remove the two-factor authentication.

55.   Since June 25, 2024, Jeteractive has exercised control over the www.sigmapiphi.org website, to the exclusion of Sigma Pi Phi, by refusing to provide access to and exclusive control over Sigma Pi Phi's data that was used to create and maintain functionality of the website to Sigma Pi Phi.

56.   Sigma Pi Phi has met all preconditions to ownership of the SIGMA PI PHI trademark and the www.sigmapiphi.org website.

57.   Jeteractive has failed to return the Fraternity's email database despite the Fraternity requesting return of the Fraternity's email database.

58.   Jeteractive's aforementioned unlawful acts are willful and intended to tarnish the reputation of Sigma Pi Phi and its services.

59.   Jeteractive's aforementioned unlawful acts have caused, and will continue to cause irreparable harm to Plaintiff and the SIGMA PI PHI trademark, and to the business and services represented thereby.

60.   Jeteractive's said acts will continue to damage Sigma Pi Phi unless restrained by this Court.

## IV. CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

61.     Sigma Pi Phi restates and incorporates the allegations in the preceding paragraphs 1 through 60 as if set forth fully herein.

62.     Sigma Pi Phi and Jeteractive entered into an Agreement on September 24, 2012. *See generally*, Ex. 4.

63.     Pursuant to the Agreement, Sigma Pi Phi has "full and exclusive right, title and interest in and to all patents, copyrights, trademarks (including any applications therefor), trade secrets, and other intellectual property rights developed under, or relating to the subject matter of" the Agreement. *Id*. at § 9.01.

64.     Jeteractive breached the Agreement among other ways, when it (a) assumed control of the www.sigmapiphi.org website and email account at the exclusion of Sigma Pi Phi; (b) blocked Sigma Pi Phi's access to its intellectual property, including its trade secrets; (c) published an unauthorized statement on the www.sigmapiphi.org website; and (d) requested changes to the terms of the Agreement in exchange for removing the unauthorized statement Jeteractive made on the www.sigmapiphi.org website.

65.     As a direct and proximate result of Jeteractive's actions, Sigma Pi Phi has suffered and continues to suffer immediate and irreparable harm for which there is no adequate remedy at law as well as damages.

66.     Jeteractive's actions constitute breach of contract.

67.     Jeteractive's actions have caused Sigma Pi Phi to suffer damages in an amount to be proven at trial.

### COUNT II – CYBERSQUATTING 15 U.S.C. § 1125(d)

68.     Sigma Pi Phi restates and incorporates the allegations in the preceding paragraphs 1 through 67 as if set forth fully herein.

69.     Upon information and belief, Jeteractive had and has a bad faith intent to profit from the registration and use of the sigmapiphi.org domain by among other things, (a) registering the domain in its own name and thereafter using the domain to unlawfully extract payments from Sigma Pi Phi and excluding Sigma Pi Phi's use of the domain and website content and all functionality associated therewith; (b) posting a public request for payment, even after acknowledging prepayment from Plaintiff; and (c) demanding new terms to the Agreement.

70.     Sigma Pi Phi has been damaged by Defendant's unlawful use of the sigmapiphi.org domain name and will continue to suffer irreparable harm.

71.     Jeteractive's conduct constituted and/or constitutes extorsion in an attempt to receive additional money from Sigma Pi Phi for use of the www.sigmapiphi.org website.

72.     As a direct and proximate result of Jeteractive's conduct, Sigma Pi Phi suffered and is suffering injury, loss, inconvenience, damage, and significant

expense.

73.    Jeteractive's actions have been willful and intentional.

74.    Jeteractive's actions violate the Anticybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

75.    Sigma Pi Phi is entitled to an award of injunctive relief and damages caused by Jeteractive's conduct, the exact amount of which will be demonstrated and proven at the time of trial; and is also entitled to an award of exemplary damages and attorneys' fees.

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS UNDER DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836, et seq.

76.    Sigma Pi Phi restates and incorporates the allegations in the preceding paragraphs 1 through 75 as if set forth fully herein.

77.    Sigma Pi Phi owns and possesses confidential and trade secret information.

78.    Sigma Pi Phi's confidential and trade secret information includes: (A) its membership listing and the member's biographical information, (B) the membership's contact information, (C) Sigma Pi Phi's administrative content housed in the data server, (D) Sigma Pi Phi's delegate management interface, (E) Sigma Pi Phi's delegate e-mail servers, (F) the source code associated with the www.sigmapiphi.org website, and (G) a compilation trade secret incorporating trade

secrets (A) through (F) above.

79.    Sigma Pi Phi has taken reasonable measures to keep such information secret and confidential by, among other steps, limiting access to such information to select members of the Sigma Pi Phi organization, and requiring Sigma Pi Phi members to abide by confidentiality agreements and observe Sigma Pi Phi's policy on protecting its proprietary and confidential information.

80.    Sigma Pi Phi's proprietary and confidential information derives independent economic value from not being generally known to and not being readily ascertainable through other means by another person who could obtain economic value from the disclosure or use of the information.

81.    On or about September 24, 2012, Jeteractive entered into an Agreement with Sigma Pi Phi. *See* Ex. 4.

82.    Pursuant to the Agreement, Jeteractive agreed to maintain the secrecy of Sigma Pi Phi's proprietary and confidential information. *Id.*

83.    Upon information and belief, Jeteractive blocked Sigma Pi Phi's access to its proprietary and confidential information on or about June 15, 2024.

84.    Upon information and belief, Jeteractive used Sigma Pi Phi's proprietary and confidential information to contact all of the members of Sigma Pi Phi and accessed data on the sigmapiphi.org email servers. *See* Ex. 10.

85.    Jeteractive's actions are intentional and willful.

86.     As a direct and proximate result of Jeteractive's actions, Sigma Pi Phi has suffered and continues to suffer immediate and irreparable harm and damages.

87.     Jeteractive's intentional and willful misappropriation of Sigma Pi Phi's trade secrets violates the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

88.     Sigma Pi Phi is entitled to an award of injunctive relief and all damages caused by Jeteractive's conduct, the exact amount of which will be demonstrated and proven at the time of trial; and is also entitled to an award of exemplary damages and attorney's fees.

## COUNT IV – DECEPTIVE TRADE PRACTICES

## O.C.G.A. § 10-1-372(a)(8)

89.     Sigma Pi Phi restates and incorporates the allegations in the preceding paragraphs 1 through 88 as if set forth fully herein.

90.     Jeteractive published the statement below on the www.sigmapiphi.org website.  *See* Ex. 11.

6/26/24, 1:25 PM                                  sigmapiphi.org/home

**Payment Required**

**Archon Douglass has mischaracterized the Office of the Grand Boule not paying invoices without comment since December as an issue with the vendor and legacy systems.**

**We have served the Fraternity for decades on our private, dedicated hardware without a breach, compromise or interruption.**

**The sole issue is non payment for services rendered. Service can be restored as soon as payment is received. There are no security or technical issues.**

91.     On or about June 25, 2024, Sigma Pi Phi paid Jeteractive $20,875, which included a prepayment through July 31, 2024 via an ACH transfer.  *See* Ex. 12.

92.     By July 1, 2024, Jeteractive received the funds from the ACH transfer.

93.     On or about July 2, 2024, Jeteractive contacted Sigma Pi Phi to indicate that it is "gun shy" to change the www.sigmapiphi.org website before Sigma Pi Phi agreed to change the terms of the Agreement.  *See* Ex. 14.

94.     As a direct and proximate result of Jeteractive's actions, Sigma Pi Phi has suffered and continues to suffer immediate and irreparable harm and damages.

95.     Jeteractive's disparaging and false statement violates Georgia's Uniform Deceptive Trade Practices Act (UDTPA), O.C.G.A. § 10-1-372(a)(8).

96.     Sigma Pi Phi is entitled to an award of all damages caused by Jeteractive's conduct, the exact amount of which will be demonstrated and proven at the time of trial.

## COUNT V – THEFT BY CONVERSION O.C.G.A. § 51-10-6

97.     Sigma Pi Phi restates and incorporates the allegations in the preceding paragraphs 1 through 96 as if set forth fully herein.

98.     Sigma Pi Phi possess all rights, title, and interest in and to the "SIGMA PI PHI" trademark based on its continuous use since May 15, 1904, and trademark registration with the U.S. Patent and Trademark Office.

99.   Sigma Pi Phi possess right, title, and interest to the sigmapiphi.org domain name based on its continuous use since September 5, 2002, and possess right, title, and interest in the email addresses and website content associated with sigmapiphi.org.

100.   Jeteractive, under the direction of Sigma Pi Phi, registered the domain name sigmapiphi.org and maintained it for Sigma Pi Phi's exclusive use.

101.   Jeteractive took rightful possession of the sigmapiphi.org website after the September 2012 Agreement, to the extent it was necessary for it to provide its personal information to renew the sigmapiphi.org domain.

102.   Sigma Pi Phi has, on numerous occasions, demanded the return of the sigmapiphi.org domain; and Jeteractive failed to return Sigma Pi Phi's intellectual property or respond to Sigma Pi Phi's demands.

103.   As a direct and proximate result of Jeteractive's actions, Sigma Pi Phi has suffered and continues to suffer damages.

104.   Jeteractive's actions constitute theft by conversion.

105.   Jeteractive's actions have caused Sigma Pi Phi to suffer immediate and irreparable harm and damages in an amount to be proven at trial.

**COUNT VI – ATTORNEY'S FEES PURSUANT TO O.C.G.A. § 13-6-11**

106.   Sigma Pi Phi restates and incorporates the allegations in the preceding paragraphs 1 through 105 as if set forth fully herein.

107.   Jeteractive has acted in bad faith, has been stubbornly litigious, and/or has caused Sigma Pi Phi unnecessary trouble and expense.

108.   Jeteractive is entitled to an award of its reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sigma Pi Phi demands judgment against Jeteractive as follows:

A.   Entry of a Interlocutory and Permanent Injunction restraining Jeteractive, its principals, agents, servants, employees, successors, assigns, and all individuals acting in concert or participation with Jeteractive, from using for any purpose whatsoever the designation "SIGMA PI PHI" or similar terms.

B.   Entry of an order directing Jeteractive to account for and return to Sigma Pi Phi all of the proprietary and confidential information it took from Plaintiff.

C.   Damages against Jeteractive for breach of contract, as requested in Count One.

D.   Damages against Jeteractive for the maximum damages allowable pursuant to 15 U.S.C. § 1125, as requested in Count Two.

E.   Damages against Jeteractive for misappropriation of Sigma Pi Phi's trade secrets for the maximum damages allowable pursuant to 18 U.S.C. § 1836, *et seq.*, as requested in Count Three.

F.   Damages against Jeteractive for deceptive trade practices for the maximum

damages allowable pursuant to O.C.G.A. § 10-1-372(a)(8), as requested in Count Four.

G.     Damages against Jeteractive for theft by conversion for the maximum damages allowable pursuant to O.C.G.A. § 51-10-6, as requested in Count Five.

H.     That the costs of this action, including Plaintiff's reasonable attorneys' fees, be assessed against Jeteractive.

I.     That the Court award such other and further relief as it deems just, equitable and proper.

Submitted this 27th day of August, 2024

**DENTONS US LLP**

*/s/ Thurbert Baker*
Thurbert Baker
Georgia Bar No. 033887
Mark A. Silver
Georgia Bar No. 811928
Leanne E. Sunderland
Georgia Bar No. 351965
***Counsel for Plaintiff***

303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308-3265
(404) 527-4000
(404)527-4198 (fax)
thurbert.baker@dentons.com
mark.silver@dentons.com
leanne.sunderland@dentons.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GRAND BOULE OF SIGMA PI PHI
FRATERNITY, INC. d/b/a SIGMA PI
PHI,

          Plaintiff,

    v.

JETERACTIVE, LLC,

          Defendant.

Civil Action File No.

**JURY TRIAL DEMANDED**

## **FONT CERTIFICATION**

Pursuant to Local Rule 7.1 D, I hereby certify that the foregoing document was prepared using Time New Roman 14 point type as provided in Local Rule 5.1.

          **DENTONS US LLP**

          */s/ Thurbert Baker*
          Thurbert Baker
          Georgia Bar No. 033887
          Mark A. Silver
          Georgia Bar No. 811928
          Leanne E. Sunderland
          Georgia Bar No. 351965

          ***Counsel for Plaintiff***

303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308-3265
(404) 527-4000
(404)527-4198 (fax)

thurbert.baker@dentons.com
mark.silver@dentons.com
leanne.sunderland@dentons.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GRAND BOULE OF SIGMA PI PHI
FRATERNITY, INC. d/b/a SIGMA PI
PHI,

             Plaintiff,

   v.

JETERACTIVE, LLC,

             Defendant.

Civil Action File No.

**JURY TRIAL DEMANDED**

## **VERIFICATION**

I, <u>Bennett Gaines</u>, being first duly sworn under oath, personally appeared before the undersigned attesting officer duly authorized by law to administer oaths, do depose and state that I have read the foregoing **PLAINTIFF GRAND BOULE OF SIGMA PI PHI FRATERNITY, INC.'S d/b/a SIGMA PI PHI, VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**, and the information contained therein is true and accurate where based on my personal knowledge, and is believed to be true and correct where based on the knowledge of others.

[SIGNATURE ON NEXT PAGE]

24

Executed in Fulton County, GA on 27 of August, 2024.



Bennett Gaines
Executive Director of Sigma Pi Phi
Fraternity

Sworn and subscribed before me
this 27th day of August, 2024.

Pamela G. Matthews
Notary Public
My Commission Expires: 11/18/2025

25